IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARILYN HUDSPETH, | ) |
|       Plaintiff, | ) ) ) |
|       v. | ) Civil Action No. 24-169 ) ) |
| NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, | ) ) ) |
|       Defendant. | |

**MEMORANDUM AND ORDER OF COURT**

Now pending before the Court is Defendant Nationwide Property and Casualty Insurance Company's ("Nationwide") Motion for Summary Judgment. (Docket No. 25). Nationwide contends that there are no genuine issues of material fact regarding Plaintiff Marilyn Hudspeth's ("Hudspeth") breach of contract claim that Nationwide improperly denied coverage under her homeowner's insurance policy. Hudspeth opposes Nationwide's motion. (Docket Nos. 27-28). For the reasons set forth herein, the Court will deny Nationwide's motion.

**I.     BACKGROUND**[1]

Hudspeth owns a residential property at 647 New Castle Avenue, in Sharon, Pennsylvania ("647 New Castle Ave."). (Docket No. 23 at ¶ 1). Nationwide issued Hudspeth an insurance policy for 647 New Castle Ave. (Policy Number 5837HR102160) for a period of June 14, 2021, through June 14, 2022. (*Id.* ¶¶ 2-3). Hudspeth had lived at 647 New Castle for many years when, on October 17, 2020, she fell at a local bank and broke her hip. (*Id.* ¶ 5; Docket No. 23-4 at 7).

---

[1]  Because the parties are familiar with the factual and procedural history of this case, the Court will keep its summary of the case background brief. The Court draws its summary from the parties' jointly filed Concise Statement of Material Facts and various exhibits. (Docket Nos. 23, 27). The Court draws all inferences in the light most favorable to the non-moving party—in this instance, Hudspeth—without weighing the evidence or questioning the witnesses' credibility. *Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998).

Hudspeth's treatment and recovery was difficult: she underwent four surgeries (Docket No. 23-4 at 7) and contracted several infections (Docket No. 23-3 at 33), which meant she was often back and forth between the Sharon Regional Hospital and a skilled nursing facility (*id.*) from the date of her fall through the date of loss giving rise to this suit. During Hudspeth's convalescence in the hospital and skilled nursing facility, her Power of Attorney—friend, Edward Laverty—checked on the property at least weekly. (Docket No. 23-3 at 15). Laverty would "walk the perimeter" of the home, check every interior room, and collect Hudspeth's mail, including her bills. (*Id.* at 15, 19). Laverty did not pay Hudspeth's bills; rather, Hudspeth monitored and paid her utility bills. (*Id.* at 17).

On February 21, 2022, Laverty arrived at 647 New Castle Ave. for his regular walk through the property. (Docket No. 23 at ¶ 10). To his surprise, when he opened the front door "it looked like it was raining inside." (*Id.* ¶ 11). Laverty searched the house to try to find the water source. (Docket No. 23-3 at 21-22). He found the water shut-off, and he also discovered that there was a broken pipe to the bathtub on the second floor, above the kitchen. (*Id.* at 22). Laverty testified that it was "extremely cold" in the house that day, which was unusual. (*Id.* at 22-23). Though Laverty did not regularly check the thermostat at 647 New Castle Ave., he monitored the temperature and did not recall anything unusual that had prompted him to check the thermostat in the past. (*Id.* at 18, 22). The last time Laverty had been at 647 New Castle Ave. (approximately a week earlier), the temperature had been "fine" in the house despite the "extreme cold weather" that was in the region that month. (*Id.* at 23).

Approximately six months after the loss, Laverty retained Metro Public Adjustment, Inc. ("Metro") to help him present an insurance claim. (Docket No. 23 at ¶¶ 12-13). Metro prepared a repairs estimate of $142,843.28. (*Id.* ¶ 14). Nationwide denied Hudspeth's claim, citing as a

basis for denial that Hudspeth was not residing at her property.  (*Id.* ¶ 21).  Provisions in Hudspeth's insurance policy indicate, among other things that: Hudspeth must notify Nationwide of any change to "occupancy or use of the 'residence premises'"; the term "residence premises" means "[t]he one-family dwelling where you reside … [o]n the inception date of the policy period shown in the Declarations and which is shown as the 'residence premises' in the Declarations"; dwelling coverage is limited to the "dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling"; and Nationwide "insure[s] the dwelling, as described in the Declarations of [the] policy, only as the 'residence premises', while occupied by the 'insured' as the owner for dwelling purposes and not otherwise," such condition applying at the "time of loss" to dwelling coverage, other structures' coverage, and personal property coverage.  (*Id.* ¶¶ 15-19).

After her claim was denied by Nationwide, Hudspeth filed suit in the Court of Common Pleas of Allegheny County, Pennsylvania, seeking recovery for Nationwide's alleged breach of contract.  (Docket No. 1 at 9).  The matter was removed to this Court (Docket No. 1) and Nationwide has now filed its motion for summary judgment, arguing that Hudspeth cannot prevail on her breach of contract claim when the evidence indisputably shows that she was not living at 647 New Castle Ave. at the inception of her policy (June 14, 2021) or on the date of loss (February 21, 2022).

## II.     LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a*).  See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those "that might affect the outcome of the suit under the governing law." *Boyle v. Cnty. of Allegheny Pennsylvania*,

139 F.3d 386, 393 (3d Cir. 1998) (quoting *Anderson*, 477 U.S. at 247–48).  A dispute pertaining to such a fact is "'genuine' if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue." *Id.* (quoting *Anderson*, 477 U.S. at 247–48).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue* of *material* fact." *Anderson*, 477 U.S. at 247–48.  When ruling on a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility.  *Boyle*, 139 F.3d at 393.

## III.   DISCUSSION

Nationwide argues that it is entitled to summary judgment because the undisputed evidence shows that it appropriately denied Hudspeth's insurance claim because Hudspeth was not residing at 647 New Castle Ave. at the inception of her policy or at the time of her loss.  Hudspeth counters her claim was improperly denied because she was a resident of 647 New Castle Ave. at all relevant times, the Policy is ambiguous with respect to the concept of residency, and the Court should consider her reasonable expectation of coverage in deciding the motion.

Under Pennsylvania law—which applies here—the interpretation of a contract is, generally, a legal question. *Gerow v. State Auto Prop. & Cas. Co.*, 346 F. Supp. 3d 769, 778 (W.D. Pa. 2018).  In the interpretation of insurance contracts, courts "must construe the terms of [a] … policy as written and may not modify the plain meaning of the words under the guise of 'interpreting' the policy." *Id.* (quoting *Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 962 (Pa. Super. Ct. 2007)).  If a policy is clear and unambiguous, the courts "give[] effect to that clear language." *Id.* (citing *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006)).  However, if there is any ambiguity in the contract, it is construed

4

in favor of the insured.  *Id.* (citing *Kvaerner*, 908 A.2d at 897).  Policy language is ambiguous if certain language, "viewed in the context of the entire policy, is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'"  *Id.* (quoting *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004)).

Hudspeth's insurance includes dwelling coverage and states that Nationwide will cover: "The dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling."  (Docket No. 23-1 at 15).  The policy defines the term "residence premises" as follows: "The one-family dwelling where you reside … on the inception date of the policy period shown in the Declarations and which is shown as the 'residence premises' in the Declarations."  (*Id.*).  The policy also indicates in subsection "R. Dwelling" that Nationwide "insure[s] the dwelling, as described in the Declarations … only as the 'residence premises,' while occupied by the 'insured' as the owner, for dwelling purposes and not otherwise."  (*Id.* at 36).  Such condition "applies, at the time of loss, to Coverage **A** — Dwelling, Coverage **B** — Other Structures and Coverage **C** — Personal Property as provided by [the insurance] contract."  (*Id.*).

Nationwide argues that these provisions make it clear that—as a condition of coverage— "the named insured must have resided at the insured location" at the inception date and the time of loss, but that Hudspeth's relationship with the property at 647 New Castle Ave. on June 14, 2021, and February 21, 2022, cannot be deemed residence.  (Docket No. 26 at 8).  Nationwide acknowledges that the Policy does not define "residence premises" (*id.* at 9), but argues that the Court should interpret the language in its policy as imposing a residence requirement.  Nationwide relies on other cases wherein the courts have "found a residence requirement when interpreting similar provisions."  (*Id.* at 10).  Based on the undisputed facts of Hudspeth's

5

hospitalization/physical rehabilitation at the inception date and her date of loss, Nationwide argues that the only reasonable conclusion is that Hudspeth is not entitled to coverage.

Though undefined in the policy itself, in Pennsylvania "residence" is defined as "one's factual place of abode," *Menzies v. Auto-Owners Ins. Co.*, No. 2:23-CV-79-NR, 2024 WL 1677486, at *2 (W.D. Pa. Apr. 18, 2024) (quoting *Quincy Mut. Fire Ins. Co. v. Clyman*, 910 F. Supp. 230, 232 (E.D. Pa. 1996)), and courts deem such term unambiguous even when it is undefined in a contract itself. *Isenberg v. State Farm Fire & Cas. Co.*, 604 F. Supp. 3d 322, 326 (W.D. Pa. 2022) (quoting *Gerow*, 346 F. Supp. 3d at 779). Residency requires "at … minimum, some measure of permanency or habitual repetition," and intent is not a relevant factor. *Id.* (quoting *Manross*, 939 A.2d at 965). The following "objective indicators" are relevant to residency: "where an individual sleeps, takes her meals, receives mail, and stores personal possessions, as well as which address an individual lists on her driver's license and tax returns, and where she does her banking." *Menzies*, 2024 WL 1677486, at *2 (cleaned up). It is also possible to have more than one residence. *Id.* "[I]f there is more than one reasonable inference to make from the evidence regarding residency, the question of residency is a question of fact for the jury to decide." *Id.* (citing *Allstate Ins. Co. v. Naskidashvili*, No. CIV.A.07-4282, 2009 WL 399793, at *4 (E.D. Pa. Feb. 16, 2009)).[2]

In this case, as in *Menzies*, there are "two competing factual narratives." *Id.* at *3. While Hudspeth was recovering from her October 2020 fall, surgeries related to breaking her hip, and

---

[2]  In *Ionata v. Allstate Insurance Co.*, the court discussed definition-of-residency cases and explained that many such cases "involve claims by non-policy holders seeking to hitchhike their way to coverage by asserting a relationship with the policyholder." No. CV 15-6561, 2016 WL 4538756, at *4 (E.D. Pa. Aug. 30, 2016). Ultimately in *Ionata*, the district court determined that there were "inconsistent terms" in the policy such that a jury was needed to find what would constitute the "reasonable expectations of the Plaintiff" who, in that case, was denied coverage based on questions about residency associated with living arrangements during a divorce. *Id.* at *5.

related infections, she sometimes was a patient at the skilled nursing facility, other times she was a patient at the hospital. During such time, she paid her utility bills for 647 New Castle Ave., her home of decades, and had her Power of Attorney regularly inspect and care for the property. (Docket No. 23 at 2). Her possessions remained at the property, and there is evidence she had a ramp and stair lift installed at her home for mobility assistance in light of her medical challenges between late 2020 and February 2022. Such evidence presents a genuine issue of material fact with respect to the common law definition of residence, which is about "permanency or habitual repetition." *Menzies*, 2024 WL 1677486, at *2. Accordingly, it is appropriate to engage a "factfinder 'to resolve the parties' differing versions of the truth at trial.'" *Id.* at *3 (quoting *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011), *as amended* (Oct. 20, 2011)).[3]

## IV. CONCLUSION

For the foregoing reasons, the Court will <u>deny</u> Nationwide's motion for summary judgment (Docket No. 25). Accordingly, the Court enters the following Order:

AND NOW, this 25th day of July 2025, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Docket No. 25) is **denied**.

<i>s/ W. Scott Hardy</i><br>
W. Scott Hardy

---

[3] The Court finds support for its decision in several cases in this and other courts addressing similar claims. *See, e.g.*, *Isenberg*, 604 F. Supp. 3d at 329 (denying defendant-insurer's motion for summary judgment where "undisputed facts surrounding Plaintiff's situation"—such as renting an apartment while she made extensive renovations to the insured property—"do support a finding that Plaintiff resided at the Property."); *Naskidashvili*, 2009 WL 399793, at *4 (denying insurer's summary judgment motion because "reasonable fact-finders, viewing the competing evidence in the record, could come to different conclusions" regarding residency under Pennsylvania law); *Strouss v. Fireman's Fund Ins. Co.*, No. CIV.A. 03-5718, 2005 WL 418036, at *11 (E.D. Pa. Feb. 22, 2005) ("[U]nder Pennsylvania law, the determination of a college student's residence pursuant to an insurance policy is a matter of fact for the factfinder."); *Kaylor v. Donegal Mut. Ins. Co.*, No. 1068 WDA 2012, 2013 WL 11272836, at *3 (Pa. Super. Ct. Mar. 19, 2013) (deciding status as a resident was not undermined by stay in a personal care home). *But see Gerow*, 346 F. Supp. 3d at 780 ("Mr. Gerow lacks the touchstone of residency—regular physical presence at the Subject Property.").

                                                      United States District Judge

cc/ecf:  All counsel of record